**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**


**BOBBY RALEIGH,**

    **Petitioner,**

**v.**

                         **CASE NO. 6:07-cv-37-Orl-28KRS**

**SECRETARY, DEPARTMENT OF**
    **CORRECTIONS**

    **Respondent,**
_____/


**MOTION TO ALTER OR AMEND JUDGMENT**
**AND MOTION FOR RECONSIDERATION OF THE DENIAL OF**
**A CERTIFICATE OF APPEALABILITY**

    **COMES NOW** the Petitioner, **BOBBY RALEIGH,** by and through his undersigned counsel, and moves this Court, pursuant to Fed. R. Civ. P. 59(e), to alter and/or amend the Judgment of this Court (Doc. 71) entered on September 20, 2013.  This Court's rationale for its Judgment in favor of Respondent was explained in the Order entered in this cause on September 19, 2013 (Doc. 70).  In that Order, this Court denied Petitioner a certificate of appealability (hereinafter COA).  Mr. Raleigh suggests that this Court erred in its resolution of questions of both law and fact

1

and in the denial of a COA.[1]  In support of this motion, Mr. Raleigh states:

1.    Rule 59(e) of the Federal Rules of Civil Procedure permits a motion to alter or amend judgment to be filed "[n]o later than 28 days after the entry of judgment."  This motion is filed within 28 days of the entry of the judgment, and hence, this motion is timely filed.

2.    Herein, Mr. Raleigh brings to this Court's attention reasons why he believes that the manner in which this Court addressed the first three claims in Mr. Raleigh's §2254 petition should be revisited and altered or amended. Mr. Raleigh also addresses herein the reasons why this Court's denial of a COA should be reconsidered and a COA issued to Mr. Raleigh.

3.    In addressing Claim One of Mr. Raleigh's habeas petition, this Court referenced the claim as a *Giglio*[2] claim (Doc. 70 at 11).  This Court then set forth the following as the governing standard:

> A petitioner can establish a due process violation pursuant to *Giglio* by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to what he subsequently learned was false

---

[1]Mr. Raleigh in no way abandons and/or waives any arguments as to the matters contained in his habeas petition which are not expressly addressed in this motion.

[2]*Giglio v. United States*, 405 U.S. 150 (1972).

2

> testimony,' and (2) there is a reasonable
> probability that the perjured testimony could have
> affected the judgment." *United States v. Elso*, 364
> F. App'x 595, 599 (11th Cir. 2010)(quoting *Davis v.
> Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006).

While this may be the standard when a habeas petitioner
presents a *Giglio* claim premised upon the presentation of
perjured testimony, Mr. Raleigh's claim was not premised
upon an allegation that the prosecutor presented perjured
testimony.  Certainly, the distinction was apparent in the
Eleventh Circuit's phraseology of the standard in *Guzman v.
Sec'y Dept. of Corr.*, 663 F.3d 1336 (11th Cir. 2011).
There, a specific allegation that false testimony was
perjured was not part of the claim.  In those circumstances,
the Eleventh Circuit set forth the standard as follows:

> To establish a *Giglio* claim, a habeas petitioner
> must prove: "(1) the prosecutor knowingly used
> perjured testimony or **failed to correct what he
> subsequently learned was false testimony;** and (2)
> such use was material, i.e., that there is any
> reasonable likelihood that the false testimony could
> ... have affected the judgment."  *Ford v. Hall*, 546
> F.3d 1326, 1332 (11th Cir. 2008)(quotation marks
> omitted).

*Guzman*, 663 F.3d at 1348 (emphasis added).  In *Guzman*, the
allegation was that the prosecutor either knowingly
presented false testimony or failed to correct the false
testimony when he subsequently learned that false testimony
had been presented.

4.   In fact, the Eleventh Circuit in *Guzman* noted that

a *Giglio* claim was but a variation, a specific type of a due process claim premised upon *Mooney v. Holohan*, 294 U.S. 103 (1935), and its progeny:

> We begin by noting that the "clearly established federal law" relevant to Guzman's claims was firmly established long before Guzman's trial and postconviction proceedings.  As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935)**, the Supreme Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice."**  In *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed. 2d 1217 (1959)**, the Supreme Court explained, "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."**

*Guzman*, 663 F.3d at 1347 (emphasis added).  Thus as the Eleventh Circuit noted in *Guzman*, the Supreme Court in *Mooney* and *Napue* had established that when the prosecutor employs deliberate deception to obtain a conviction, due process is violated.[3]

5.   The presentation of perjured testimony is but one way that the prosecutor can employ deliberate deception in violation of the due process principles first outlined in *Mooney*.  The presentation of false evidence is another as noted in *Guzman*.  Yet another way under *Napue* is the failure to correct evidence it knows to be false which the

---

[3]Mr. Raleigh relied upon both *Mooney v. Holohan* and *Napue v. Illinois* in his amended memorandum of law in support of his habeas corpus petition (Doc. 57, at 9).

prosecutor had not solicited.  Indeed within the *Napue* opinion, yet another case was quoted which further illuminates the parameters of the claim that was first recognized in *Mooney v. Holohan*.  That case cited in *Napue* was *Alcorta v. Texas*, 355 U.S. 28 (1957).[4]  In *Alcorta v. Texas*, the Supreme Court explained the due process violation under *Mooney* as follows:

> It cannot seriously be disputed that Castilleja's testimony, taken as a whole, **gave the jury the false impression** that his relationship with petitioner's wife was nothing more than that of casual friendship. This testimony was elicited by the prosecutor who knew of the illicit intercourse between Castilleja and petitioner's wife. Undoubtedly Castilleja's testimony was seriously prejudicial to petitioner. It tended squarely to refute his claim that he had adequate cause for a surge of "sudden passion" in which he killed his wife. **If Castilleja's relationship with petitioner's wife had been truthfully portrayed to the jury, it would have, apart from impeaching his credibility, tended to corroborate petitioner's contention that he had found his wife embracing Castilleja.**

*Alcorta v. Texas*, 355 U.S. at 31-32 (emphasis added).[5]

---

[4]Mr. Raleigh relied upon *Alcorta v. Texas* in his amended memorandum of law in support of his habeas corpus petition (Doc. 57, at 9).

[5]It must noted that the Supreme Court in *Giglio* acknowledged the *Mooney*, *Alcorta* and *Napue* line of cases:

> As long ago as Mooney v. Holohan, 294 U. S. 103, 112 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in Pyle v. Kansas, 317 U. S. 213 (1942).

6.   Most recently, the Supreme Court addressed *Mooney* and its progeny in *Gray v. Netherland*, 518 U.S. 152 (1996).[6] There the allegation at issue was that "the Commonwealth violated due process by misleading petitioner about the evidence it intended to use at sentencing."   *Gray*, 518 U.S. at 162.   The Supreme Court found this constituted a basis for a due process claim under *Mooney*: "*Mooney* forbade the prosecution to engage in 'a deliberate deception of court and jury.'"   The Supreme Court then concluded that:

> *Mooney*, of course, would lend support to petitioner's claim if it could be shown that the prosecutor deliberately misled him, not just that he changed his mind over the course of the trial.

*Gray v. Netherland*, 518 U.S. at 165.   Thus, the touchstone of the due process claim that runs from *Mooney* through *Alcorta*, *Napue*, and *Giglio*, and ultimately *Gray v. Netherland,* is deliberate deception.   The focus is on whether the prosecutor deliberately misled the jury, the court and defense counsel through his actions and the

---

> In *Napue v. Illinois*, 360 U. S. 264 (1959), we said, "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id., at 269.

*Giglio v. United States*, 405 U.S. at 153.

[6]Mr. Raleigh relied upon *Gray v. Netherland* in his amended memorandum of law in support of his habeas corpus petition (Doc. 57, at 9).

evidence that he presented and/or failed to correct.[7]

7.   This Court's analysis as reflected in its Order assumed, as did the Florida Supreme Court, that the claim was one premised upon the knowing presentation of perjured testimony; indeed both this Court and the Florida Supreme Court indicated that for the claim to be meritorious it must shown that perjured testimony was knowingly presented. (Doc. 70, at 11).  *See Raleigh v. State*, 932 So. 2d 1054, 1065 (Fla. 2006).  However, Mr. Raleigh's claim is premised upon the prosecution's presentation of an out-of-court statement by the co-defendant.  Mr. Raleigh's claim is not premised upon the presentation of perjured testimony. Applying a standard that necessarily requires that perjured testimony was presented is contrary to or an unreasonable

_____

[7]The bedrock nature of *Mooney v. Holohan* and its progeny is reflected in the Florida Rules of Professional Conduct.  Rule 4-3.3 (a)(4), which applies to all Florida lawyers, not just prosecutors, prohibits a lawyer from offering evidence that a lawyer knows to be false.  However, Rule 4-3.8(c), which sets forth special responsibilities imposed upon a prosecutor, requires the prosecutor "to disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."  In Mr. Raleigh's case, the prosecutor was admittedly aware of the co-defendant's statement taking responsibility for one of the homicides, which conflicted with the statement of the co-defendant to the police that the prosecution introduced into evidence at Mr. Raleigh's penalty phase proceeding.  The conflicting unpresented statement was undoubtedly mitigating information and within the scope of Rule 4-3.8.

application of clearly-established federal law set forth in *Mooney v. Holohan*, *Alcorta v. Texas*, *Napue v. Illinois* and *Gray v. Netherland*.  Indeed, this Supreme Court cases were not cited either by this Court in its Order or by the Florida Supreme Court in its 2006 opinion.

8.   Certainly, the Florida state courts did not analyze Mr. Raleigh's due process under *Mooney*, *Alcorta*, *Napue*, or *Gray v. Netherland*.  The requisite fact findings under these case were simply not made because the Florida Supreme Court and the Florida trial court unreasonably believed that the only way that a due process claim could be shown under *Mooney* and its progeny was by a showing that the testimony presented by the prosecutor was perjured and the prosecutor knew it was perjured.  That just simply is not the law as *Gray v. Netherland*, the most recent Supreme Court addressing this, clearly demonstrates.

9.   This Court should revisit Claim One and find that the Florida Supreme Court's analysis was contrary to or an unreasonable application of clearly-established federal law, and because no state court fact findings were made as to the proper standard, *de novo* review of Mr. Raleigh's Claim One.

10.   As to Claim Two, this Court failed to recognize that Mr. Raleigh's claim is an Eighth Amendment claim, separate and distinct from his claim premised upon *Mooney v.*

*Holohan* and its progeny.  As to this claim, this Court

relied upon the Eleventh Circuit opinion in *Fotopoulos v.*

*Sec'y Dept. of Corr.*, 516 F.3d 1229, 1234-35 (11ᵗʰ Cir.

2008).  However at issue in *Fotopoulos* was a due process

claim:

> The Secretary of Corrections argues that the
> district court compounded its error when it
> concluded that the State had violated Fotopoulos's
> right to due process by presenting inconsistent
> theories about Fotopoulos's domination of. Hunt in
> the trials of Fotopoulos and Hunt.

*Fotopoulos*, 516 F.3d at 1234.  The Eleventh Circuit noted

that the district court had based its grant of relief upon

*Berger v. United States*, 295 U.S. 78 (1935),[8] explaining:

> the district court recognized its error and
> referenced Berger v. United States, 295 U.S. 78, 55
> S.Ct. 629, 79 L.Ed. 1314 (1935), as the decision of
> the Supreme Court that supported its conclusion.
> This post-hoc rationale also failed to give the
> proper, deference to the decision of the Supreme
> Court of Florida. In Berger, the Supreme Court
> ordered a new trial after it determined that the
> prosecutor had struck "foul" blows. Id. at 88, 55
> S.Ct. at 633. The Court described the conduct of the
> prosecutor as "indecorous and improper" because he,
> among other things, bullied witnesses and misstated
> facts, but the Berger Court did not mention any
> issue about the use of alleged inconsistent
> theories. Id. at 84, 55 S.Ct. at 631.

*Fotopoulos*, 516 F.3d at 1235.

11.  Indeed in *Fotopoulos*, the Eleventh Circuit relied

---

[8]*Berger v. United States* is clearly not an Eighth
Amendment case, and has nothing to do with *Furman v.*
*Georgia*, 408 U.S. 238 (1972), and its progeny, including
*Bradshaw v. Stumpf*, 545 U.S. 175 (2005).

upon Justice Thomas' concurrence in *Bradshaw* v. Stumpf, 545

U.S. 175 (2005), as demonstrating that there was no due

process basis for the claim presented therein:

> Moreover, as Justice Thomas explained in his
> concurrence in Bradshaw, "[the Supreme] Court has
> never hinted, much less held, that the Due Process
> Clause prevents a State from prosecuting defendants
> based on inconsistent theories." 545 U.S. at 190,
> 125 S.Ct. at 2409 (Thomas, J. concurring).

*Fotopoulos*, 516 F.3d at 1235.

　　12.　But here, Mr. Raleigh presented in Claim Two an

Eighth Amendment challenge to his sentence of death.　In the

majority opinion in *Bradshaw*, it was recognized that there

were two separate claims before the Court there:

> **The Court of Appeals was also wrong to hold that
> prosecutorial inconsistencies between the Stumpf and
> Wesley cases required voiding Stumpf's guilty plea.**
> Stumpf's assertions of inconsistency relate entirely
> to the prosecutor's arguments about which of the two
> men, Wesley or Stumpf, shot Mrs. Stout. For the
> reasons given above, see supra, at 183-184, the
> precise identity of the triggerman was immaterial to
> Stumpf's conviction for aggravated murder. Moreover,
> Stumpf has never provided an explanation of how the
> prosecution's postplea use of inconsistent arguments
> could have affected the knowing, voluntary, and
> intelligent nature of his plea.
>
> **The prosecutor's use of allegedly inconsistent
> theories may have a more direct effect on Stumpf's
> sentence, however, for it is at least arguable that
> the sentencing panel's conclusion about Stumpf's
> principal role in the offense was material to its
> sentencing determination.** The opinion below leaves
> some ambiguity as to the overlap between how the
> lower court resolved Stumpf's due process challenge
> to his conviction, and how it resolved Stumpf's
> challenge to his sentence. It is not clear whether

> the Court of Appeals would have concluded that
> Stumpf was entitled to resentencing had the court
> not also considered the conviction invalid.

*Bradshaw v. Stumpf*, 545 U.S. at 186-87 (emphasis added).  As

to the first claim, a due process claim, the Supreme Court

found no basis for relief.[9]  As to the second claim, an

Eighth Amendment claim, the Supreme Court found no *Teague*

bar and remanded to the circuit court for further

consideration.  In his concurrence, Justice Souter

specifically addressed these two different claims and

explained why he believed a remand on the Eighth Amendment

claim was required:

> Stumpf's claim as I understand it is not a challenge
> to the evidentiary basis for arguing for the death
> penalty in either case; nor is it a claim that the
> prosecution deliberately deceived or attempted to
> deceive either trial court, as in Mooney v. Holohan,
> 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (per
> curiam); nor does it implicate the rule that
> inconsistent jury verdicts may be enforced, United
> States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83
> L.Ed.2d 461 (1984); Dunn v. United States, 284 U.S.
> 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).  **As I see it,
> Stumpf's argument is simply that a death sentence
> may not be allowed to stand when it was imposed in
> response to a factual claim that the State
> necessarily contradicted in subsequently arguing for
> a death sentence in the case of a codefendant.** * * *
>
> **Ultimately, Stumpf's argument appears to be that
> sustaining a death sentence in circumstances like**

---

[9]It is the due process claim that Justice Thomas
addressed in his concurrence which relied upon by the
Eleventh Circuit to reject the due process claim presented
by the Petitioner in *Fotopoulos*.

> **those here results in a sentencing system that
> invites the death penalty "to be ... wantonly and .
> . . freakishly imposed."** <u>Lewis v. Jeffers</u>, 497 U. S.
> 764, 774 (1990) (quoting <u>Gregg v. Georgia</u>, 428 U. S.
> 153, 188 (1976) (joint opinion of Stewart, Powell,
> and STEVENS, JJ.) (internal quotation marks
> omitted)).

*Bradshaw v. Stumpf*, 545 U.S. at 189 (emphasis added).  It
is this latter claim, the one specifically identified by
Justice Souter in his concurrence, that Mr. Raleigh
presented as Claim Two of his amended petition.

13.   However, neither this Court nor the Florida
Supreme Court addressed Mr. Raleigh's claim as an Eighth
Amendment claim arising from *Furman v. Georgia* and *Gregg v.
Georgia*.  The Florida Supreme Court's analysis of this
claim was either an unreasonable application of or contrary
to well-established Eighth Amendment jurisprudence dating
back to *Furman v. Georgia* and *Gregg v. Georgia* that
precludes a sentencing scheme that invites the death
penalty to be wantonly and freakishly imposed.

14.   The very fact that the Supreme Court remanded
*Bradshaw v. Stumpf* for further consideration of this Eighth
Amendment claim in an AEDPA case establishes that it is a
valid well-established claim.

15.   Mr. Raleigh very specifically pled in Claim Two
that:

> The factual findings made by the judge who sentenced
> Mr. Raleigh to death simply cannot be used to

12

> justify Mr. Raleigh's execution when the State's argument at Figueroa's trial contradicted them.  Due process and the Eighth Amendment demand reliability, *i.e.* that findings of fact in support of a death sentence be connected to reality, and not just supported by competent and substantial within the four corners of the trial transcript.

(Doc. 56, at 10).[10]

16.  This Court's failure to recognize the Eighth Amendment basis for the claim is apparent when it states in its Order: "Finally, even assuming the State took inconsistent position, the evidence presented at Petitioner's penalty phase amply supported the findings made by the state court."[11]  Order at 16.  Claim Two is not premised upon the State taking inconsistent positions. Claim Two is premised upon the fact that the judicial findings of fact in support of Mr. Raleigh's death sentence, both as to aggravating and mitigating circumstances, are inconsistent with the evidence presented by the State at Figueroa's trial and the arguments the

---

[10]The importance that the tribunal at sentencing must be made aware of mitigating evidence that the prosecutor knows about in order to insure reliability is underscored by Rule 4-3.8(c), Florida Rules of Professional Responsibility.

[11]This language suggests that this Court viewed Mr. Raleigh's Claim Two as raising a challenge to whether the sentencing judge's factual findings are support by competent evidence.  However, that was not Mr. Raleigh's claim.  His claim is about the procedure employed in the case and whether it was adequate to meet the reliability requirements of *Furman* and its progeny.

State made based upon that evidence.  Given that *Furman v. Georgia* and its progeny demand reliability in death sentences in order to insure that a death sentence will not be wantonly or freakishly imposed, the two alternate and discordant realities reflected in the sentencing judge's findings in support of Mr. Raleigh's death sentence and reflected in the State's evidence and argument at Figueroa's trial clearly demonstrates an arbitrary resolution of the facts in violation of the Eighth Amendment.  In one version, Mr. Raleigh was the mastermind who killed two people, in the other, he was a "drunken boob" who did as he was told and killed one person as directed by the co-defendant.

17.  At this point, we don't know which version of reality is more fact based.  We only know that Mr. Raleigh's sentencing judge based upon the State's case found Mr. Raleigh to have been not only the driving force who coldly planned the crime, but the individual who actually killed two victims.  We also know that the State on the basis of evidence that was not heard during Mr. Raleigh's penalty phase proceeding argued in the co-defendant's case that Mr. Raleigh was a "drunken boob" and that Mr. Raleigh only killed one of the victims at the direction of the co-defendant, Mr. Figueroa, who was the

14

driving force behind the murders.  We also know that the co-defendant, Mr. Figueroa, received a life sentence in a proceedings in which he was portrayed as more culpable than Mr. Raleigh.

18.  The Florida Supreme Court has stated that "[t]ruth is critical in the operation of our judicial system." *Florida Bar v. Feinberg*, 760 So.2d 933, 939 (Fla. 2000); *Florida Bar v. Cox*, 794 So.2d 1278 (Fla. 2001). Rule 4-3.8 of the Florida Rules of Professional Responsibility imposes special responsibilities upon prosecutor in criminal cases that are not imposed upon other lawyers.  As the comment to that rule explains: "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."  While this sets the baseline in all criminal cases, *Furman v. Georgia*, *Gregg v. Georgia* and their progeny require a capital sentencing scheme to go further in insuring that a death sentence is not wantonly or freakishly imposed.  The procedure here where all of the conflicting evidence was not submitted to the crucible of an adversarial testing simply does not measure up to Eighth Amendment requirements.

19.  This is not about sufficiency of the evidence. It is about the inadequacy of a capital sentencing scheme that allows a death sentence to be imposed based upon one

view reality which the prosecution tries establish in a co-defendant's trial was not the correct version of reality. Was Mr. Raleigh the criminal mastermind who killed two people or the drunken boob who was directed by his co-defendant to kill one victim, thus at worst an equally culpable participant in the murders planned by the co-defendant?

20.   This Court overlooked the Eighth Amendment basis of Mr. Raleigh's Claim Two.[12]  This Court should grant this motion and revisit the claim.

21.   As to Claim Three, this Court found one of the ineffectiveness claims set forth within Claim Three to be procedurally barred:

> Petitioner did not raise a claim in the state court that counsel rendered ineffective assistance by failing to call Jose Figueroa to testify that Domingo Figueroa admitted killing one of the victims.  There, this portion of claim three is procedurally barred from review by this Court absent an exception to the procedural default bar.

(Doc. 70, at 17).  In this regard, this Court overlooked the fact that Mr. Raleigh **did raise** a claim that counsel was ineffective in failing to introduce the co-defendant's

---

[12]Of course, the Eighth Amendment is applicable in a state court criminal prosecution through the Due Process Clause of the Fourteenth Amendment.  However, an Eighth Amendment claim is different from a straight up due process claim under *Mooney v. Holohan,* as the Supreme Court specifically recognized in *Bradshaw v. Stumpf*.

admission to his uncle that he had killed one of the victims.  This claim was clearly presented in Mr. Raleigh's Rule 3.851 motion filed in November of 2010.  This claim was pursued on appeal to the Florida Supreme Court.  Mr. Raleigh's initial brief filed in the Florida Supreme Court in November of 2011 specifically argued:

> While Figueroa made contradictory statements to his uncle admitting that he committed one of the killings, trial counsel neither sought to admit those contradictory statements nor insist on cross-examining Figueroa about those statements.  Trial counsel was ineffective in how this was handled in that 1) he  unreasonably opened the door to Figueroa's taped statement by mentioning it on cross and permitting the State to introduce it on redirect, and/or 2) he failed to object to the admission of Figueroa's taped statement, and/or 3) he erroneously believed that the State was going to call Figueroa as a witness, and/or 4) he failed to consider his alternatives such as presenting Figueroa's statement to his uncle and/or 5) he waived Mr. Raleigh's right to examine Figueroa about his admissions to his uncle.  Mr. Raleigh was greatly prejudiced by the introduction of Figueroa's statement that Mr. Raleigh committed both killings and by the failure to apprise the jury that Figueroa admitted to his uncle that Mr. Raleigh was telling the truth when he indicated that Figueroa was in the residence and that he killed Eberlin.  Not only did the statement cast the greater culpability on Mr. Raleigh, this unrebutted statement also cast doubt on Mr. Raleigh's veracity as a witness, painted Mr. Raleigh as the leader and aggressor, was used to find that the cold, calculated premeditated aggravator, the heinous, atrocious cruel aggravator, and the avoiding arrest aggravator all applied, and weakened the defense arguments concerning mental health mitigators, the substantial domination mitigator, and Figueroa's life sentence as a mitigator.
> According to the taped statement he gave to law enforcement which minimized his role, Figueroa

indicated that, thought he was driving his car to the victim's residence, it was Mr. Raleigh who was directing him because he, Figueroa allegedly didn't know where Cox lived (T. 1133-34).  Subsequently, when they arrived at the victims' residence the first time, Figueroa's taped statement portrayed himself as being reluctant and a non-participant, while portraying Mr. Raleigh as the first to show a gun when Figueroa just wanted to leave (T. 1137).  According to the taped statement to the police, Mr. Raleigh wanted to confront the victim (T. 1137-38), and Mr. Raleigh killed the two victims (T. 1128-29).  Figueroa's recounting of the incident to the police was not only inconsistent with and contrary to Mr. Raleigh's account, it was inconsistent with Figueroa's statement to his uncle which the State introduced against Figueroa at Figueroa's trial.

As a result of the introduction of Figueroa's devastating, inculpatory statement to law enforcement, one that was not subject to cross-examination, Mr. Raleigh's Sixth Amendment right of confrontation was waived without his consent.  The statement was introduced by the State without the jury hearing that in direct contradiction to what he told the police, Figueroa told his uncle that he in fact killed one of the victims.  Favorable and exculpatory evidence contradicting the evidence presented by the State was inexplicably not presented by Mr. Raleigh's trial attorneys.

Trial counsel's stated explanation for allowing the taped statement to be utilized against Mr. Raleigh, whether true or not, was simply not a reasonable decision.  According to counsel Teal, he was seemingly of the belief that Figueroa was going to testify if the taped statement wasn't introduced and conversely, that Figueroa would not testify if the statement was introduced.  Trial counsel's thinking was unreasonable in light of his acknowledgment that he obtained no agreement that in exchange for his waiver of an objection to the statement, the State would not call Figueroa (PCT. 229-32).  And of course, none of this explains the failure to present Figueroa's admissions to his uncle that he was in the residence and that he killed Eberlin, consistent with Mr. Raleigh's account.

Trial counsel's decision was shown to be even more unreasonable by the trial prosecutor's

18

testimony.  According to prosecutor Blackburn, there
were no plans to have Figueroa testify at Mr.
Raleigh's penalty phase (PCT. 279-280).  The elected
State Attorney Alexander, who personally prosecuted
Figueroa with prosecutor Blackburn, confirmed this
position.  Alexander had communicated to Figueroa's
counsel that there would be no pleas reached until
after Mr. Raleigh's case was resolved (PCT. 306).
Alexander didn't trust either defendant stated,
"[t]o me their help would be zero for the State of
Florida.  I couldn't see how they could help, either
one of them could help either one of us, or could
help the State, I should say" (PCT. 306-07).

Initial Brief, *Raleigh v. State*, Case No. SC11-1272, at 38-

41.  The Florida Supreme Court denied Mr. Raleigh's appeal

in the following fashion: "Affirmed.  See Walton v. State,

77 So.3d 639 (Fla. 2011)."  In *Walton*, the Florida Supreme

Court found that Florida capital defendants who had been

sentenced to death and been denied relief on an ineffective

assistance of counsel claim prior to the issuance of the

U.S. Supreme Court's decision in *Porter v. McCollum*, 130

S.Ct. 447 (2009), were not entitled to the benefit of

*Porter* because it was an evolutionary refinement of

*Strickland v. Washington*, 466 U.S. 668 (1984).  Of course,

the question of whether *Porter v. McCollum* was dictated by

*Strickland* or a change in the *Strickland* standard is itself

a federal question.  Any bar resting upon a state court's

answer to a federal question is not an independent

procedural bar that precludes presentation of the

constitutional claim in federal court.  *See Ake v.*

19

*Oklahoma*, 470 U.S. 68, 74-75 (1985).  This Court's
conclusion that this portion of the ineffectiveness claim
was procedural barred from consideration is simply
erroneous.  This Court overlooked the fact that the issue
was indeed raised in the Florida state courts.  No
independent procedural bar precludes merits consideration
of the claim.

    22.  In addition, even if there is a valid procedural
bar, this Court glossed over the significance of *Martinez
v. Ryan*, 132 S.Ct. 1309 (2012), and did not mention the
Supreme Court's most recent decision in this area - *Trevino
v. Thaler*, 133 S.Ct. 1911 (2013).  The ineffective
assistance of state court collateral counsel in the failure
to present an ineffectiveness of trial counsel claim at the
initial post conviction proceeding at which such a claim
can be presented under Florida law was found by both
*Martinez* and *Trevino* to constitute cause to circumvent any
resulting state court procedural bar.

    23.  This Court without explanation simply concluded
that Mr. Raleigh had not shown cause for any procedural bar
as to the trial counsel ineffective assistance claim.  (Doc.
70, at 17).  However, well-established Florida law from 1993
recognized that a trial attorney's failure to know that a
co-defendant's out-of-court statement admitting to

committing the actual murder constituted ineffective
assistance of counsel. *Garcia v. State*, 622 So.2d 1325
(Fla. 1993). Case law at the time of Mr. Raleigh's
sentencing clearly held that a co-defendant's out-of court,
unsworn admission to being the triggerman is straight
admissible at a penalty phase proceeding, and that the
failure to be aware of the statement's admissibility was
deficient performance.

24. Not only was the decision in *Garcia* out at the
time of Mr. Raleigh's penalty phase, it was out long before
the initial collateral review. Thus, collateral counsel's
failure to know that Figueroa's admission that he killed one
of the victims was admissible, and that a trial attorney's
failure to know that had been specifically found to be
ineffective assistance by trial counsel, was by definition
also deficient performance. This is bedrock Florida law.
Trial counsel could have introduced Figueroa's admission to
his uncle that he killed one of the victims. Trial counsel
must be charged with knowing the law, i.e. *Garcia v. State*,
and so must collateral counsel at the initial review
proceeding. The failure to present the claim on which
controlling case law had found merit was clearly deficient
performance. Mr. Raleigh had an equitable right to
effective collateral counsel. On the facts pled as

21

demonstrating a violation of this equitable right an evidentiary hearing is required since one has not been conducted either by this Court or by the Florida state courts.  This Court erred in denying Mr. Raleigh an evidentiary hearing on his assertion that collateral counsel's ineffectiveness under *Martinez/Trevino* constituted cause to circumvent any procedural bar as a result of collateral counsel's failure to present the claim in the initial collateral review proceedings.

25.  This Court also overlooked the law that any asserted strategy by counsel must be reasonable.  *Horton v. Zant*, 941 F.2d 1449 (11th Cir. 1991).  A strategic decision made either on inadequate investigation or ignorance of the law is not reasonable.  *Hardwick v. Crosby*, 320 F.3d 1127 (11th Cir. 2003).

26.  As to Claim Three, this Court also overlooked the requirement that the prejudice prong component of the *Strickland* analysis must be conducted cumulatively.  *See Kyles v. Whitley*, 514 U.S. 419 (1995); *Smith v. Sec'y Dept. of Corr.*, 572 F.3d 1327 (11th Cir. 2009).

27.  In evaluating the reasonableness of trial counsel's performance, this Court overlooked the fact that under Florida law a prosecutor must give notice of witnesses he intends to call.  If a witness's name is not on the

22

witness list, the prosecutor cannot call the witness if it would prejudice the defense.  Domingo Figueroa's name was not on the State's witness list and could not be called by the State at Mr. Raleigh's penalty phase proceeding. According to trial counsel, he was nonetheless of the belief that Figueroa was going to testify if the taped statement to law enforcement wasn't introduced and conversely, that Figueroa would not testify if the statement was introduced. But, trial counsel's thinking was unreasonable in light of the requirement that the witness's names be disclosed and in light of trial counsel's own acknowledgment that he obtained no agreement that in exchange for his waiver of an objection to the statement, the State would not call Figueroa (PCT. 229-32).

28.  This Court also overlooked the testimony from the trial prosecutors.  According to prosecutor Blackburn, there were no plans to have Figueroa testify at Mr. Raleigh's penalty phase (PCT. 279-280).  The elected State Attorney Alexander, who personally prosecuted Figueroa with prosecutor Blackburn, confirmed this position.  Alexander had communicated to Figueroa's counsel that there would be no pleas reached until after Mr. Raleigh's case was resolved (PCT. 306).  Alexander didn't trust either defendant and stated, "[t]o me their help would be zero for the State of

Florida.  I couldn't see how they could help, either one of them could help either one of us, or could help the State, I should say" (PCT. 306-07).  To conclude that Mr. Raleigh's trial counsel made a reasonable strategic decision was contrary to or an unreasonable application of *Strickland* and its progeny.

29.  In addressing Claim Four, this Court failed to recognize the cumulative nature of the prejudice inquiry.  At no time did either the state court or this Court conduct a cumulative analysis of the prejudice to Mr. Raleigh arising from the deficient performance set forth in Claim Three with the prejudice to Mr. Raleigh arising from the deficient performance set forth in Claim Four.  This was contrary to or an unreasonable application of clearly established federal law.  *Kyles v. Whitley*, 514 U.S. 419 (1995); *Smith v. Sec'y Dept. of Corr.*, 572 F.3d 1327 (11th Cir. 2009).

30.  As to Claim Six, this Court failed to recognize that a State's substantive law, such as defining the elements of a crime, becomes the date the statute is passed or the date a statutory construction is found to govern the criminal activity.  *Fiore v. White*, 531 U.S. 225 (2001).  In *Delgado v. State*, 776 So.2d 233 (Fla. 2000), the Florida Supreme Court noted that "[t]he State prosecuted this case

on the premise that appellant's entry into the victims' home
was consensual (i.e. appellant was invited to enter the
victims' home) but at some point, this consent was
withdrawn." *Delgado*, 776 So. 2d at 236.  At issue in
*Delgado* were events in 1990 and whether those events
constituted the crime of "burglary" under Florida's
substantive criminal law **in effect in 1990**.  In *Delgado*, the
Florida Supreme Court discussed the historical definition of
the crime of burglary.  The court noted the particular
problems associated with the definition of the crime as it
related to those who had entered the premises with consent.
The court set forth the statutory definition of burglary at
the time of the offense in 1990: "Section 810.02(1), Florida
Statutes (1989), states: Burglary means entering or
remaining in a structure or conveyance with the intent to
commit an offense therein, unless the premises are open to
the public or the defendant is licensed or invited to enter
or remain." *Id*.  The Florida Supreme Court concluded that
"the 'remaining in' language applies only in situations
where the remaining in was done surreptitiously." *Id*. at
240.  The court specifically receded from its prior holding
on Mr. Raleigh's direct appeal ("By our holding today, we
recede from this Court's previous opinions in *Robertson*,
*Jimenez*, and **Raleigh**, a decision which we do not undertake

lightly."). *Id*. at 241. Accordingly, the matter in *Delgado*
was remanded for a new trial.

31. In *State v. Ruiz*, 863 So. 2d 1205 (Fla. 2003), the
Florida Supreme Court applied *Delgado* to criminal
prosecutions for alleged burglaries in 1998 and in 1995.
The Florida Supreme Court returned to the issue in yet
another capital case. *Fitzpatrick v. State*, 859 So. 2d 486
(Fla. 2003). At issue there was a first degree murder
conviction arising from a 1980 homicide. Mr. Fitzpatrick
was tried in 2000, after the release of the decision in
*Delgado*. He was prosecuted on both premeditated and felony
murder theories. The underlying felonies relied upon by the
State were burglary and robbery. Because the evidence
showed that the entry into the victim's home was consensual
but did not establish that the defendant remained in the
home surreptitiously, the burglary conviction was reversed
and a new trial ordered on the basis of *Delgado*.

32. So under *Delgado, Ruiz*, and *Fitzpatrick*, Florida's
substantive criminal law as of 1980 (when the alleged crime
in *Fitzpatrick* occurred), 1990 (when the alleged crime in
*Delgado* occurred), and 1995 (when the alleged crime in *Ruiz*
occurred), was that if consensual entry occurred there could
not be a burglary because "the 'remaining in' language
applies only in situations where the remaining in was done

surreptitiously." *Id.* at 240.  According to the Florida
Supreme Court this was how burglary was defined in the State
of Florida in 1980, 1990, and 1995.  Yet according to the
Florida Supreme Court that definition of the crime of
burglary magically disappeared on the morning of June 5,
1994, and did not govern as to the alleged criminal activity
committed by Mr. Raleigh.  This is the only explanation as
to why the statutory construction of the burglary statute
appearing in *Delgado*, *Fitzpatrick* and *Ruiz* did not apply in
Mr. Raleigh's case.  Magically appearing and disappearing
substantive criminal law defining the elements of a crime is
contrary to or an unreasonable application of clearly
established federal law.  *Bousley v. United States*, 523 U.S.
614, 620 (1998); *Fiore v. White*, 531 U.S. 225 (2001);
*Bunkley v. Florida*, 538 U.S. 835 (2003).  This Court
overlooked these U.S. Supreme Court decisiosn constituting
the controlling federal law under the AEDPA.

33.  In any event for the same reasons that he seeks to
be reheard on the claims outlined above, Mr. Raleigh asserts
that a certificate of appealability should issue as to these
claims.  Mr. Raleigh respectfully requests that this Court,
at a minimum, grant him a COA on these claims.

**WHEREFORE,** Mr. Raleigh respectfully requests that this
Court grant this motion to alter or amend judgment, and/or

grant Mr. Raleigh a certificate of appealability.

Respectfully submitted,


/s/ Martin J. McClain
MARTIN J. MCCLAIN
Fla. Bar No. 0754773
McClain & McDermott, P.A.
Attorneys at Law
141 N.E. 30th Street
Wilton Manors, FL 33334
(305) 984-8344
martymcclain@earthlink.net

Attorney for Petitioner
BOBBY RALEIGH

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing motion has been furnished by electronic service to Kenneth Nunnelley, Senior Assistant Attorney General, on this 18th day of October, 2013.


/s/ Martin J. McClain
MARTIN J. MCCLAIN